[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes before the court pursuant to the plaintiff, Michael McNally's (hereinafter called McNally) application for prejudgment remedy. Spectron Energy (hereinafter called Spectron) filed an application for temporary restraining order in a separate case. The plaintiff, McNally, claims a failure by Spectron to pay him wages in the amount of $76,974.61 and to reimburse him expenses in the amount of approximately $19,786.05, owed him pursuant to a contract of employment between himself and Spectron. Other remedies are sought including interest and attorney's fees. Spectron claims theft of trade secrets, misuse of computer systems, computer theft, and CUTPA violations.
In approximately April of 1994, Spectron decided to enter the highly technical natural gas derivative trading market. This business was relatively new for Spectron. Spectron sought to recruit an experienced natural gas derivative trader in order to enable Spectron to enter the natural gas derivative market. Fred Gradin, the president of Spectron, interviewed McNally. McNally was an experienced derivative trader with the Wall Street Investment Banking Firm of Bear Stearns. He had been at Bear Stearns for nine years. Because of the goals that were set at Bear Stearns it was apparent that he would receive a sizeable bonus from CT Page 12572-C Bear Stearns that year.
Through his employment at Bear Stearns, McNally had developed extensive client contacts and had developed two lists which he updated to stay current in the industry. The first list contained the names, addresses and phone numbers of all of McNally's contacts. (Exhibit 8). The second list contained the names and location of pipe lines used in the basis swap transactions. (Exhibit 11). Exhibit 10 showed that this information was available to the public in a trade publication.
McNally was offered a job at Spectron. The agreement was reduced to writing. He was offered a salary and bonus package and a signing bonus. The signing bonus was to off-set the bonus that he was to receive from Bear Stearns, but which was forfeited by going to Spectron. This bonus was subsequently reduced by agreement to $25,000.00. The agreement entered into was for a two year period (see Exhibit 1).
Pursuant to the contract, McNally was to be paid a salary of $150,000.00 per year and was entitled to a quarterly bonus, payable within 45 days of the end of each quarter with the quarters beginning on May, August, November and February, based on formula all as set forth in the contract and agreed upon by the parties. The court finds that McNally received his salary during his entire employment at Spectron and that he received his bonus for the May, June and July quarters pursuant to the contract. Tensions developed between McNally, Stevens and Tracy, other employees of Spectron during the quarter beginning in August. There was some dispute as to the commissions generated by McNally and the bonus split between these parties. The others wanted McNally's bonus to be reduced and to have him go on his own with regard to commissions generated towards his bonus.
The court finds that McNally never orally agreed to retroactively reduce his already earned bonus for the second quarter and to go on his own for the purposes of determining his bonus for future prospective quarters. It is also clear that the bookkeeper never changed her accounting procedures to reflect the alleged oral modification, and that there was no consideration for waiving the already earned commissions. The Exhibit to the November 18th agreement did not address any oral agreement to waive payment for already earned commissions. There is no mention in that agreement of reduced bonus payments for commissions already earned. No other agreement entered into between the parties, CT Page 12572-D including Exhibit 3, changed the binding nature of the original two year employment contract which was still in full force and effect.
The court will address McNally's claim for wages first. The written agreement between the parties provided that the bonus would be paid within 45 days of the end of each quarter. (See Paragraph 6 of the contract). It is claimed these monies were not paid and formed the basis of McNally's claims against Spectron. Exhibit 4 sets forth the formula to be used. It evidences that McNally is owed a bonus of $76,974.61.
The court finds that there is probable cause to sustain the fact that Spectron breached the employment contract and failed to pay him the commission due as shown on Exhibit 6 of $76,974.61. Accordingly, a prejudgment attachment may issue for that amount.
As to the expenses claimed of $19,786.05, the court finds that the clear language of the agreement is that reasonable "out-of-pocket expenses" shall be reimbursed. McNally has failed to establish that these were out-of-pocket expenses rather then just ordinary expenses. The failure to pay the bonus due on or before December 15, 1995 while McNally was still employed by Spectron, is a material breach of the contract. It is also clear that pursuant to the November 19, 1994 writing, Spectron agreed to meet a goal of hiring one experienced broker and one junior broker. They did not do that and this is a further breach allowing McNally to cancel. McNally did cancel the contract by his letter of resignation. See Exhibit A.
The court does not find that there is probable cause to sustain the plaintiff's burden that Spectron's conduct was done arbitrarily, unreasonably and in bad faith. The court therefore does not grant a prejudgment remedy to secure his attorney's fees, interest, and double damages.
Spectron claims that it has established the existence of a trade secret and that therefore a set-off and a temporary injunction is an appropriate remedy for them. The court finds that the lists (Exhibits 8 and 11) were not trade secrets. Mr. McNally developed the lists in question. He primarily did so during his previous nine years in the industry prior to his employment at Spectron. No credible evidence was produced for the proposition that McNally either copied or deleted the alleged programs or that said programs even exist, or if they did, that there was any value. This is concerning the alleged taking of the computer programs or CT Page 12572-E spread sheets.
It also is found that there was no secrecy provided by the employer. All one had to do to obtain access to the list in question was to turn on McNally's computer. There was no pass word or code installed, no lock and key on the computer, and no program designed to limit the use or access of the computer to any persons at any time. Spectron has failed to prove that the list brought to Spectron by McNally and modified by McNally while employed by Spectron, were proprietary in nature, or that they belonged to Spectron. It is evident from the testimony that it is necessary and natural for a gas trader to have access to and contact with other traders and suppliers. There is no trade secret where the customers' names can be readily ascertained through ordinary business channels or reference resources. There was testimony at trial that those companies trading in natural gas and pipeline matters were readily ascertainable through the book Who's Who in Natural Gas.
The court finds that the lists (Exhibit 8 and Exhibit 11) are not trade secrets and that the injunction is denied since it is not necessary to prevent irreparable harm.
For the reasons stated aforesaid, the court finds that there is no theft of computer services. Although McNally did not have express authorization to take his list, it is clear that one does not need authorization to take what is his or what he reasonably believes to be his. The computer theft statute requires someone to take that which he was not authorized to take. This has not been proven by Spectron. The court finds that Spectron has not proven that McNally either copied or deleted any other programs off the computer.
The court finds that Spectron has failed to establish that McNally's actions violated CUTPA for the reasons set forth hereinbefore. His acts were not immoral and/or deceptive.
The court finds that Spectron breached the written contract for employment and that there is probable cause that McNally will be successful for his unpaid bonus in the amount of $76,974.61. The court finds that based on the expressed terms of the contract, the expenses referred to were out-of-pocket and accordingly, probable cause is not found for the claimed expenses. Although Spectron's conduct was a breach of the contract, the court does not find that it was arbitrary, unreasonable, and done in bad faith to CT Page 12572-F allow any type of additional punitive damages or attorney's fees at this point.
It is also found that Spectron has failed to meet their burden of proof for theft of trade secrets or computer systems in that the two lists retrieved by McNally upon his termination were McNally's own property and were not proprietary or confidential information on Spectron. In addition, these lists were readily accessible to the public involved in this kind of matter. The court does not find that McNally took or deleted other programs created by Spectron. The court finds that McNally did not violate CUTPA by retrieving his own lists. The court finds that there is not probable cause to believe that Spectron will prevail and accordingly the application for temporary injunction is denied as well as any claims they have for set-off against McNally's claim.
Orders may enter accordingly.
KARAZIN, J.